# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

DANIEL J. KAISER, on behalf of himself
and all others similarly situated,

Plaintiff,

vs.

STUBHUB, INC.,

Defendant.

Case No. 24-CV-00044 (JLR)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT STUBHUB, INC.'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO COMPEL ARBITRATION

**HOLLAND & KNIGHT LLP**

Duvol M. Thompson
Amir Alimehri
31 W 52nd Street, 12th Floor
New York, NY 10019
Duvol.Thompson@hklaw.com
Amir.Alimehri@hklaw.com
(212) 513-3200

*Attorneys for Defendant StubHub, Inc.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................... 1

PROCEDURAL HISTORY AND FACTUAL BACKGROUND ................................... 3

    *A.*    *Kaiser's Complaint and Removal to Federal Court* ...................................... 3
    *B.*    *Kaiser Agrees to Resolve Disputes with StubHub, Inc. via Mandatory Individual Arbitration* ................................................................................................. 4

ARGUMENT ............................................................................................................ 7

  POINT I    The Complaint Fails to State a Claim Against StubHub, Inc. .............. 7

    *A.*    *Rule 12(b)(6).* ............................................................................................ 7
    *B.*    *The Breach of Contract Claim Should Be Dismissed Because Kaiser Did Not Purchase the Ticket He Complains of Through StubHub, Inc.* ........................... 8
    *C.*    *The Conversion Claim Is Duplicative of the Contract Claim and Fails to State a Claim.* ..................................................................................................... 9
    *D.*    *The Fraud Claim Is Duplicative of the Contract Claim and also Fails to Allege an Actual Fraud.* ........................................................................................... 10
    *E.*    *The Civil RICO Claim Should Be Dismissed as Impermissibly Extraterritorial.* ......... 14
    *F.*    *The Civil RICO Claim Fails to State a Claim.* ............................................ 16

      i.    Kaiser Does Not Adequately Allege a "Pattern of Racketeering" Because He Alleges a Single Transaction. .............................................................. 16
      ii.   Kaiser Does Not Adequately Allege Any Cognizable Predicate Acts Under 18 U.S.C. § 1961(1). ..................................................................... 16
      iii.  Kaiser Cannot Adequately Allege the Requisite Scienter for Any Purported Predicate Acts. ...................................................................................... 17
      iv.  Kaiser Cannot Adequately Allege Proximate Causation Because StubHub, Inc. Did Not Own the Ticket at Issue Here and StubHub, Inc. Expressly Disclaims Any Responsibility for the Validity of Tickets Sold Through StubHub, Inc.'s Website. 18
      v.   Kaiser Fails to Adequately Plead a RICO "Enterprise" Because StubHub, Inc. by Itself Cannot Constitute an "Enterprise". ............................................... 19

  POINT II    Alternatively, the Court Should Compel the Parties to Arbitrate this Case, and Stay the Current Action Pending the Completion of Arbitral Proceedings ............................. 19

    *A.*    *The FAA Requires Enforcement of the Agreement to Arbitrate* .................... 19
    *B.*    *Kaiser Unequivocally Agreed to Resolve Disputes with StubHub, Inc. via Mandatory Arbitration.* ............................................................................................ 21
    *C.*    *Kaiser's Claims Fall Within the Scope of the Arbitration Agreement.* ............ 24
    *D.*    *The FAA Requires a Stay of this Action Pending Arbitration* ....................... 25

CONCLUSION ........................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Achtman v. Kirby, McInerney & Squire, LLP*,
    464 F.3d 328 (2d Cir. 2006)...................................................................................................7

*American Exp. Co. v. Italian Colors Restaurant*,
    570 U.S. 228 (2013)..............................................................................................................20

*Ameriprise Captive Ins. Co. v. Audatex N. Am., Inc.*,
    No. 1:22-CV-05964 (JLR), ___ F. Supp. 3d ___, 2023 WL 3738942
    (S.D.N.Y. May 30, 2023)...................................................................................................4, 7

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986)..............................................................................................................24

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011).........................................................................................................19, 21

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006)..............................................................................................................21

*Cedric Kushner Promotions, Ltd. v. King*,
    533 U.S. 158 (2001)..............................................................................................................19

*Citizens Bank v. Alafabco, Inc.*,
    539 U.S. 52 (2003)................................................................................................................20

*City of New York v. Cyco.Net, Inc.*,
    383 F. Supp. 2d 526 (S.D.N.Y. 2005)..................................................................................17

*Cronos Grp. Ltd. v. XComIP, LLC*,
    156 A.D.3d 54 (1st Dept. 2017)...........................................................................................10

*David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd. (London)*,
    923 F.2d 245 (2d Cir. 1991)................................................................................................20

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)..............................................................................................................21

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
    375 F.3d 168 (2d Cir. 2004).............................................................................12, 13, 16, 18

*Fire & Police Pension Ass'n of Colorado v. Bank of Montreal*,
    368 F. Supp. 3d 681 (S.D.N.Y. 2019)..................................................................14

*First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*,
    52 F. Supp. 3d 625 (S.D.N.Y. 2014).....................................................................9

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir. 1994)...................................................................................18

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991)...............................................................................................25

*Gould Paper Corp. v. Madisen Corp.*,
    614 F. Supp. 2d 485 (S.D.N.Y. 2009)..................................................................10

*Hemi Grp., LLC v. City of New York, N.Y.*,
    559 U.S. 1 (2010).................................................................................................18

*Hesse v. Godiva Chocolatier, Inc.*,
    463 F. Supp. 3d 453 (S.D.N.Y. 2020)....................................................................8

*Jordan v. Pierre*,
    No. 18-CV-8528 (JGK), 2021 WL 2581444 (S.D.N.Y. June 22, 2021) ................17

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)................................................................................12

*Lundy v. Cath. Health Sys. of Long Island Inc.*,
    711 F.3d 106 (2d Cir. 2013)................................................................................16

*Martin v. New Am. Cinema Grp., Inc.*,
    No. 1:22-CV-05982 (JLR), 2023 WL 2024672 (S.D.N.Y. Feb. 15, 2023) ......11, 13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)...........................................................................................20, 25

*NCC Sunday Inserts, Inc. v. World Color Press, Inc.*,
    692 F. Supp. 327 (S.D.N.Y. 1988) ......................................................................12

*Newman v. Mor*,
    No. 08CV658(RJD)(CLP), 2009 WL 890552 (E.D.N.Y. Mar. 31, 2009)..............10

*Pirozzi v. Fiserv Corp.*,
    No. SACV2102130CJCADSX, ___ F. Supp. 3d ___ , 2022 WL 3696581
    (C.D. Cal. Feb. 16, 2022).....................................................................................11

*Ritchie v. Taylor*,
    701 F. App'x 45 (2d Cir. 2017) ................................................................16, 17, 18

*Sharbat v. Iovance Biotherapeutics, Inc.*,
    No. 20 CIV. 1391 (ER), 2022 WL 45062 (S.D.N.Y. Jan. 5, 2022) ...........................................8

*Spool v. World Child Int'l Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008) ...........................................................................................12

*Stralia Mar. S.A. v. Praxis Energy Agents DMCC*,
    431 F. Supp. 3d 366 (S.D.N.Y. 2019) ...........................................................................10

*Utts v. Bristol-Myers Squibb Co.*,
    251 F. Supp. 3d 644 (S.D.N.Y. 2017), *aff'd sub nom. Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019) .......................................................12

*Vargas v. Choice Health Leasing*,
    No. 09 CIV. 8264 DLC, 2010 WL 3398482 (S.D.N.Y. Aug. 26, 2010) .................................17

*Wendt v. BondFactor Co. LLC*,
    No. 16-CV-7751 (DLC), 2017 WL 3309733 (S.D.N.Y. Aug. 2, 2017) .................................24

*Yegiazaryan v. Smagin*,
    599 U.S. 533 (2023) ...........................................................................................14, 15, 16

**Statutes**

18 U.S.C. § 1961(1) ...........................................................................................15, 16, 17

28 U.S.C. §§ 1331, 1441, and 1446 ...........................................................................3

California Penal Code § 496 ...........................................................................................11

Federal Arbitration Act ...........................................................................................19, 20, 21, 25

RICO ...........................................................................................*passim*

**Other Authorities**

Rule 9(b) ...........................................................................................*passim*

Rule 12(b)(6) ...........................................................................................4, 7

iv

Defendant StubHub, Inc., by and through its attorneys of record, respectfully submits this Memorandum of Law in Support of StubHub's Motion to Dismiss the Complaint, or in the Alternative, to Compel Arbitration, filed November 22, 2023 (ECF No. 1-1) (the "Complaint"), by Plaintiff Daniel J. Kaiser ("Plaintiff" or "Kaiser").

## PRELIMINARY STATEMENT

In his eight-page, barebones Complaint against StubHub, Inc., Plaintiff, a seasoned practicing attorney,[1] asserts tenuous and unfounded claims, including a civil RICO claim, in connection with an allegedly invalid ticket to a soccer match in the United Kingdom, which he bought from a seller (presumably in the UK) and through a UK website operated by StubHub International ("SH Int'l") (NOT the defendant here). To be clear, StubHub, Inc. did not facilitate the sale of any UK soccer tickets to Kaiser and is simply the incorrect party here. Even if Kaiser attempted to purchase tickets for a soccer match taking place in the UK through StubHub, Inc., he undoubtedly would have been directed to SH Int'l's website to make his purchase.

Kaiser's claims arise out of a single transaction between Kaiser and an unnamed seller for the sale of soccer match tickets allegedly purchased using StubHub, Inc.'s website. *See* Compl. ¶ 7. Kaiser's breach of contract claim, however, fails because he does not identify the contract he had with StubHub, Inc., let alone any specific provision of such contract that StubHub, Inc. breached. Even assuming Kaiser purchased his tickets through StubHub, Inc.'s website (which he did not and could not have), the StubHub, Inc. User Agreement ("User Agreement"), which must be agreed to in order to make purchases through StubHub, Inc.'s website, governs this dispute in its entirety. The User Agreement precludes the relief he is seeking, and makes clear through its

---

[1] Plaintiff is a named shareholder at the law firm of Kaiser, Saurborn & Mair. Plaintiff graduated from New York University Law School in 1989 and has been admitted to the New York bar since 1990, over 34 years.

express provisions that StubHub, Inc. did not promise Kaiser (and in fact expressly disclaims) that tickets purchased from a seller will be valid tickets.

Similarly, the conversion and fraud claims should be dismissed as duplicative of the breach of contract claim because they arise from the same set of facts and do not identify a separate wrong from what Kaiser alleges StubHub, Inc. promised in connection with his purchase of soccer match tickets. The conversion and fraud claims also fail because Kaiser cannot identify any wrongful conduct on StubHub, Inc.'s part. In fact, the User Agreement makes clear what StubHub, Inc.'s role and obligations (if any) are in connection with the sale and purchase of a ticket through StubHub, Inc.'s website, which merely serves as a marketplace for buyers and sellers. As a registered user, Kaiser knew, or should have known, StubHub, Inc.'s role (if any) in ticket sales. Kaiser registered for a user account with StubHub, Inc. over a year prior to his purchase of the soccer match tickets at issue. He agreed to the terms and conditions in the User Agreement. Kaiser, therefore, cannot satisfy the "reasonable reliance" requirement of his fraud claim because the User Agreement put him on notice of StubHub, Inc.'s obligations.

Kaiser's RICO claim also should be dismissed because he does not plead the requirements of a RICO claim to sufficiently state a plausible claim. The RICO predicate acts (to the extent even expressly alleged) and the RICO injury are impermissibly extraterritorial because all of the relevant conduct Kaiser complains of occurred outside the United States. The only domestic connection is that Kaiser allegedly "felt his economic injury" in Brooklyn because that is where he used his computer to purchase the tickets. But under Supreme Court and Second Circuit case law, this by itself is simply not enough, and the Court should dismiss the RICO claim for those reasons alone.

Additionally, the RICO claim fails because it: (1) alleges a "pattern" of racketeering based on a *single* transaction; (2) alleges conduct not cognizable as RICO predicate acts; (3) does not adequately plead specific intent for any of the conduct; (4) does not plead proximate causation, as it was the seller's nonperformance (not StubHub, Inc.) that caused the alleged loss; and (5) alleges a no single-entity "enterprise" (i.e., not a cognizable enterprise).

Finally, by using StubHub, Inc. and becoming a registered user, Kaiser explicitly entered into a binding arbitration agreement wherein he agreed to arbitrate all claims arising from his use or access to StubHub, Inc.'s website. Moreover, Kaiser, has attempted to bring this case on behalf of a putative class, which is expressly prohibited by the User Agreement, as it only permits users to pursue claims on an "individual basis." Despite his obligations under the arbitration agreement, Kaiser inappropriately invoked this Court's jurisdiction over his claims. If the Court is not inclined to dismiss the Complaint then it should, in the alternative, compel arbitration of this dispute and stay this case until the completion of arbitral proceedings.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

### A.    Kaiser's Complaint and Removal to Federal Court.

Plaintiff filed this action against StubHub, Inc. on November 22, 2023 in the Supreme Court of the State of New York, County of New York. StubHub, Inc. was served with process on December 4, 2023, and on January 3, 2024, StubHub, Inc. removed this action to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, (ECF No. 1).

Kaiser alleges that on June 21, 2023, he purchased two tickets to a September 30, 2023, soccer match between Tottenham Hotspurs and Liverpool in London, England. Compl. ¶¶ 7, 11. The seller (unidentified in the Complaint) then transferred the tickets to Kaiser. *Id*. ¶¶ 11-12. In connection with his purchase, Kaiser received various confirmation and informational emails from

SH Int'l. *Id*. ¶¶ 8-9, 11.[2] On the day of the soccer match, Kaiser claims "the ticket scanner [at the stadium] did not recognize the tickets," and he "was directed to the Tottenham Ticket Office" where he allegedly was "told that the tickets were fraudulent/invalid and that [StubHub, Inc.] was not authorized to sell and/or serve as a third party broker for tickets at Tottenham Hotspurs Stadium." *Id*. ¶¶ 14-15. Kaiser alleges StubHub, Inc. "has sold hundreds of invalid, unauthorized Tottenham Hotspurs Stadium tickets and, indeed, thousands of tickets to a variety of events that it never had authorization to sell nor to serve as a third [party] broker." *Id*. ¶ 17. Kaiser further alleges StubHub, Inc. "knew that it had no authority to sell and/or serve as third party broker for the sale of tickets to a variety of events" and that it was notified of this "by Tottenham Stadium and other entertainment and sports venues." *Id.* ¶¶ 19-20. Kaiser asserts four causes of action: (1) breach of contract; (2) conversion; (3) fraud; and (4) civil RICO. *Id.* ¶¶ 37-48.

## B.    Kaiser Agrees to Resolve Disputes with StubHub, Inc. via Mandatory Individual Arbitration

Kaiser is a registered user of StubHub, Inc. *See* Declaration of Victor Gonzales dated February 2, 2024 ("Gonzales Decl.") ¶ 11. An individual creating an account with StubHub, Inc. must agree to the StubHub, Inc. User Agreement ("User Agreement") and its attendant policies, which are all incorporated by referenced or expressly referenced therein. Gonzales Decl. ¶¶ 9, 12.[3]

---

[2] Although the Complaint quotes from various emails received by Kaiser, Kaiser did not attach any of the emails to the Complaint. Upon counsel's request, Kaiser provided copies of the emails he referenced. *See* Declaration of Duvol M. Thompson ("Thompson Decl.")  ¶ 5, **Exs. B, C,** and **D** (emails all identifying "stubhubinternational.com" as the sender and "Ticketbis SL." as the copyright owner in the footer, and otherwise not even referencing StubHub, Inc.). The emails unequivocally confirm that Kaiser did not purchase tickets through StubHub, Inc., but rather through SH Int'l. The Court should consider the full copies of the emails cited in the Complaint in connection with this motion to dismiss, as they are referenced in the Complaint and can be considered on a Rule 12(b)(6) motion. *Ameriprise Captive Ins. Co. v. Audatex N. Am., Inc.*, No. 1:22-CV-05964 (JLR), ___ F. Supp. 3d ___, 2023 WL 3738942, at *6 (S.D.N.Y. May 30, 2023).

[3] A true and correct copy of the User Agreement is attached to the Gonzales Declaration as **Exhibit A**. The User Agreement is integral to the Complaint (most obviously in connection with the breach of contract claim) and thus may be considered on a motion to dismiss, as noted below.

StubHub, Inc.'s business records reflect that Kaiser registered an account on February 6, 2022, and agreed to StubHub, Inc.'s User Agreement. *See id.* ¶ 11.

Even assuming Kaiser bought his ticket through StubHub, Inc. (which he did not), the User Agreement makes clear that, as relevant here: (1) StubHub, Inc. is simply "a ticket marketplace"; (2) StubHub, Inc. does "not own the Tickets sold on the Site"; (3) StubHub, Inc. does not have "control over and do[es] not guarantee the existence, quality, safety or legality of the Tickets; the truth or accuracy of the user's content or listings; the ability of Sellers to sell tickets or Buyers to pay for them; or that a Buyer or Seller will complete a transaction"; (4) StubHub, Inc. makes "no warranty with respect to its software, services, site, any tickets, any event, any user content, or that sellers or buyers will perform as promised." User Agreement §§ 1, 3.1., 3.2., 20.1.

StubHub, Inc.'s User Agreement effective June 2022 was in effect when Kaiser allegedly purchased tickets through StubHub, Inc. Gonzales Decl. ¶¶ 11-12. Notably, the User Agreement accepted by Kaiser (and all StubHub, Inc. users), includes an agreement to arbitrate, specifically advising StubHub, Inc. users that any and all disputes or claims arising between the user and StubHub, Inc. shall be resolved exclusively through arbitration on an individual basis, rather than in court. *Id.* ¶¶ 24-26. The StubHub, Inc. User Agreement highlights the arbitration provision on the very first page in all capital letters and bold font:

> **FOR ALL USERS RESIDING IN THE UNITED STATES, PLEASE BE ADVISED: CLAUSE 22 OF THIS AGREEMENT CONTAINS AN AGREEMENT TO ARBITRATE, WHICH WILL, WITH LIMITED EXCEPTIONS, REQUIRE YOU TO SUBMIT CLAIMS YOU HAVE AGAINST US TO BINDING AND FINAL ARBITRATION, UNLESS YOU OPT-OUT. UNLESS YOU OPT OUT: (1) YOU WILL ONLY BE PERMITTED TO PURSUE CLAIMS AGAINST US ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION OR PROCEEDING, AND (2) YOU WILL ONLY BE PERMITTED TO SEEK RELIEF (INCLUDING MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF) ON AN INDIVIDUAL BASIS.**

The User Agreement also explains the requirement to bring claims on an individualized basis:

**1. Prohibition of Class and Representative Actions**
EXCEPT WHERE PROHIBITED BY LAW, YOU AND US AGREE THAT
EACH OF US MAY BRING CLAIMS PURSUANT TO THIS AGREEMENT TO
ARBITRATE AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS
AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED
CLASS, OR REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL
ACTION OR PROCEEDING. UNLESS BOTH YOU AND US AGREE
OTHERWISE, THE ARBITRATOR SHALL NOT CONSOLIDATE OR JOIN
MORE THAN ONE PERSON'S OR PARTY'S CLAIMS AND SHALL NOT
OTHERWISE PRESIDE OVER ANY FORM OF A CONSOLIDATED,
REPRESENTATIVE, CLASS, OR PRIVATE ATTORNEY GENERAL ACTION
OR PROCEEDING.

\*\*\*
**E. Opt-Out Procedure**

**You can choose to reject this Agreement to Arbitrate ('opt out') by mailing us
a written opt-out notice ('Opt-Out Notice'). The Opt-Out Notice must be
postmarked no later than 30 days after the date you accept the User
Agreement for the first time. You may also opt out no later than 30 days upon
receipt of notice that the arbitration provision is being updated or changed.
You must mail the Opt-Out Notice to StubHub, Inc., Attn: Litigation
Department, Re: Opt-Out Notice, 1209 Orange Street, Corporation Trust
Center, Wilmington, DE 19801**.

For your convenience, we are providing an Opt-Out Notice form you must complete
and mail to opt out of the Agreement to Arbitrate. You must complete the Opt-Out
Notice form by providing the information called for in the form, including your
name, address (including street number and address, city, state, and zip code),
phone number and the email address(es) used to log in to the account(s) to which
the opt-out applies. You must sign the Opt-Out Notice for it to be effective. This
procedure is the only way you can opt out of the Agreement to Arbitrate. If you opt
out of the Agreement to Arbitrate, all other parts of the User Agreement will
continue to apply. Opting out of this Agreement to Arbitrate has no effect on any
previous, other, or future arbitration agreements that you may have with us.

User Agreement §§ 22.1.(A)(1), 22.1.(E) (emphasis in original). The StubHub, Inc. User

Agreement also has a choice-of-law provision, stating that the law of the State of California will

govern "any claim, dispute or matter arising under or in connection with this User Agreement."

*See* User Agreement, § 21.1.

In order for Kaiser to create an account to utilize StubHub, Inc.'s Services, he was required to expressly agree to the terms of the StubHub, Inc. User Agreement. Gonzales Decl. ¶ 6.  These terms were made available to Kaiser for review and he had the option to opt out of the agreement to arbitrate, which he did not do. *Id*. ¶¶ 26-27.

## ARGUMENT

**POINT I      The Complaint Fails to State a Claim Against StubHub, Inc.**

### *A.  Rule 12(b)(6).*

On a motion to dismiss under Rule 12(b)(6), the court "accepts as true all non-conclusory allegations of fact" to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ameriprise Captive Ins. Co. v. Audatex N. Am., Inc.*, No. 1:22-CV-05964 (JLR), ___ F. Supp. 3d ___, 2023 WL 3738942, at *3 (S.D.N.Y. May 30, 2023) (citations omitted). The complaint's pleading of a "sheer possibility that a defendant has acted unlawfully" or of "facts that are merely consistent with a defendant's liability" are simply not enough. *Id.*; *Achtman v. Kirby, McInerney & Squire*, *LLP*, 464 F.3d 328, 337 (2d Cir. 2006) ("[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss.") (alterations in the original, internal quotations and citations omitted).

Further, the court can consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *Ameriprise Captive Ins.*, 2023 WL 3738942 at *4 (citation and ellipsis omitted). And where the complaint's allegations are inconsistent with "a document [] referenced in [the] complaint, the documents control and this Court need not accept as true the allegations in the complaint." *Id.* (Citation and ellipsis omitted).

**B.    The Breach of Contract Claim Should Be Dismissed Because Kaiser Did Not Purchase the Ticket He Complains of Through StubHub, Inc.**

"[T]o state a claim for breach of contract, a plaintiff must allege four elements: (1) the existence of a contract, (2) performance of the contract by the plaintiff, (3) breach by the defendant, and (4) damages suffered as a result of the breach."[4] *Sharbat*, 2022 WL 45062, at *5.

Here, Kaiser does not identify the contract at issue in his Complaint. Importantly, Kaiser cannot allege breach of contract because he does not have a contract with StubHub, Inc. in connection with the purchase of the tickets at issue. He purchased his tickets for a UK soccer match through SH Int'l.[5] Tickets sold for events in the UK are sold exclusively through SH Int'l. *See* Gonzales Decl. ¶¶ 14-16, 18.[6] If Kaiser attempted to purchase UK event tickets through StubHub, Inc., he would have been redirected to SH Int'l's website. *See id.* ¶¶ 14-16. StubHub, Inc. and SH Int'l are independently owned and operated, and simply share a trademark (on license from StubHub, Inc. to SH Int'l), as explained in the Gonzales Declaration. *See id.* ¶¶ 18-22.

Even assuming Kaiser bought his tickets from StubHub, Inc. (which he did not), there is only one contract that governs Kaiser's access to and use of StubHub, Inc.'s website – the User Agreement. Of course, Kaiser does not cite any provision of the User Agreement that StubHub, Inc. breached. *See* Compl. ¶¶ 37-39 (simply stating that "Defendant has breached its agreement

---

[4] The User Agreement's choice-of-law provision states that the laws of the State of California will govern "any claim, dispute or matter arising under or in connection with this User Agreement." User Agreement § 21.1. Regardless, California and New York have the same elements for a breach of contract claim. *Sharbat v. Iovance Biotherapeutics, Inc.*, No. 20 CIV. 1391 (ER), 2022 WL 45062, at *4 (S.D.N.Y. Jan. 5, 2022).

[5] Even the emails he claims he received from StubHub, Inc. clearly indicate, on their face, no reference to StubHub, Inc., and in fact, reference "stubhubinternational.com" as the sender and "Ticketbis SL." as the copyright owner in the footer of each email.

[6] Although the reference to SH Int'l's User Agreement is not based on StubHub, Inc.'s business records, the Court can nonetheless "take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination." *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 463 (S.D.N.Y. 2020).

with Plaintiffs."). Nonetheless, Kaiser complains that he purchased tickets through StubHub, Inc. but that the tickets were invalid and did not provide access to the soccer match he was trying to attend in the UK. *See id.* ¶¶ 14-15. The User Agreement, however, explicitly provides notice to both buyers and sellers of the risks associated with the purchase or sale of a ticket. It expressly provides that (1) StubHub, Inc. is simply "a ticket marketplace"; (2) StubHub, Inc. does "not own the Tickets sold on the Site"; (3) StubHub, Inc. does not have "control over and do[es] not guarantee the existence, quality, safety or legality of the Tickets; the truth or accuracy of the user's content or listings; the ability of Sellers to sell tickets or Buyers to pay for them; or that a Buyer or Seller will complete a transaction"; (4) StubHub, Inc. makes "no warranty with respect to its software, services, site, any tickets, any event, any user content, or that sellers or buyers will perform as promised." User Agreement §§ 1, 3.1., 3.2., 20.1. As such, StubHub, Inc. did not breach the User Agreement. Thus, under these facts there can be no basis for a breach of contract claim against StubHub, Inc. solely based on the purchase or sale of tickets, nor would any amended pleading cure these defects. Simply, Kaiser did not purchase his tickets through StubHub, Inc. so there can be no breach of contract claim. And even if there is a breach of contract claim, Kaiser's claims would be subject to the arbitration provisions discussed *infra*, **Point II**.

### C.    *The Conversion Claim Is Duplicative of the Contract Claim and Fails to State a Claim.*

The elements of a conversion claim are as follows: "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by wrongful act inconsistent with the property rights of the plaintiff; and (3) damages." *First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*, 52 F. Supp. 3d 625, 634 (S.D.N.Y. 2014) (quoting *In re Emery*, 317 F.3d 1064, 1069 (9th Cir. 2003)). As alleged, Kaiser's conversion claim is duplicative of the contract claim because it "is premised entirely on the breach of contract claim" and has "not identified any wrong that is

separately actionable." *Gould Paper Corp. v. Madisen Corp.*, 614 F. Supp. 2d 485, 493 (S.D.N.Y. 2009). Simply, "a cause of action for conversion will be dismissed if it is duplicative of a cause of action for breach of contract, *even if* a plaintiff meets all the elements of conversion." *Newman v. Mor*, No. 08CV658(RJD)(CLP), 2009 WL 890552, at *4 (E.D.N.Y. Mar. 31, 2009).

As argued above for the breach of contract claim, Kaiser has not alleged any wrongful act on StubHub, Inc.'s part (even assuming he bought his tickets through StubHub, Inc., which he did not). Additionally, Kaiser simply alleges for his damages that StubHub, Inc. "knowingly collected fees to which it was not lawfully entitled and thereby converted monies that did not belong to Defendant." Compl. ¶ 41. Kaiser fails to detail what "fees" were collected, whether Kaiser in fact paid any fees to StubHub, Inc. (he did not), and if so, when he paid his fees to StubHub, Inc. (never). Because Kaiser's conversion claim fails to allege or even identify any wrong that is "separately actionable" from his breach of contract claim, his conversion claim is improperly duplicative of his breach of contract claim and must be dismissed.

### D. The Fraud Claim Is Duplicative of the Contract Claim and also Fails to Allege an Actual Fraud.

Like the conversion claim, Kaiser's fraud claim fails because it is duplicative and redundant of the contract claim and "arises from the same facts as an accompanying contract claim, seeks identical damages and does not allege a breach of any duty collateral to or independent of the parties' agreements." *Cronos Grp. Ltd. v. XComIP, LLC*, 156 A.D.3d 54, 63-64 (1st Dept. 2017) (quotation marks, brackets, and citations omitted); *Stralia Mar. S.A. v. Praxis Energy Agents DMCC*, 431 F. Supp. 366, 375 (S.D.N.Y. 2019) ("The fraudulent inducement claim based on

the misrepresentation regarding Defendant's intention not to remit payment . . . is duplicative of the breach of contract claim and is therefore dismissed." (Brackets omitted)).[7]

> The User Agreement clearly governs Kaiser's use of StubHub, Inc.'s website:

> By accessing or using our Site, You agree to be bound by this StubHub Marketplace Global User Agreement ("User Agreement"). Our User Privacy Notice, Mobile Privacy Notice, Seller Policies, Cookie Notice, FanProtect Guarantee, Top Seller Handbook (if you qualify as a Top Seller and the top seller program is available in your territory) and all other policies applicable to your use of the Site (collectively, the "Additional Policies") are incorporated by reference into this User Agreement.

User Agreement § 1.

Because Kaiser created an account with StubHub, Inc. and agreed to the express terms, he was well aware of such an arrangement. All of Kaiser's allegations arise out of his alleged use of StubHub, Inc.'s website (putting aside the fact that he did not use StubHub, Inc.'s website to purchase his soccer match tickets, but rather he purchased them through SH Int'l and its website). Count III of Kaiser's claim – "Fraud" – relies wholly on prior allegations in the Complaint related to the breach of contract claim. Compl. ¶¶ 43-45. Specifically, the fraud claim's key allegation states that "[d]efendant knowingly falsely and fraudulently advertised ticket sales to plaintiffs[sic] and the public it had no authority to sell nor serve as third party broker and thereby converted funds by means of the fraud." *Id.* ¶ 44. Kaiser's breach of contract claim centers on the allegations that StubHub, Inc. allegedly breached the contract because it had "no authority to sell and/or serve as a third party broker for the sale of tickets[.]" As a result, Kaiser's fraud claim "arises out of the same facts as plaintiff's breach of contract claim" and thus "is redundant and plaintiff's sole remedy is for breach of contract." *Martin v. New Am. Cinema Grp., Inc.*, No. 1:22-CV-05982

---

[7] *Pirozzi v. Fiserv Corp.*, No. SACV2102130CJCADSX, ___ F. Supp. 3d ___ , 2022 WL 3696581, at *3 (C.D. Cal. Feb. 16, 2022) (dismissing "fraud, . . . conversion, negligence, and violation of California Penal Code section 496" claims as "duplicative of the breach of contract claim").

(JLR), 2023 WL 2024672, at *6 (S.D.N.Y. Feb. 15, 2023) (quoting *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 511 (S.D.N.Y. 2016)).

Even assuming Kaiser's fraud claims somehow arose independent of his use of StubHub, Inc.'s site and services, he does not meet the heightened pleading standards required to allege an actual fraud. "Under New York law, for a plaintiff to prevail on a claim of fraud, he must prove five elements by clear and convincing evidence: (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 n. 8 (2d Cir. 2006); *Utts v. Bristol-Myers Squibb Co.*, 251 F. Supp. 3d 644, 678 (S.D.N.Y. 2017) (noting same elements for fraud claim under California law), *aff'd sub nom. Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019). A fraud cause of action is also subjected to Rule 9(b)'s heightened pleading standard. *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008). "Rule 9(b) precludes a 'shotgun' approach to an allegation of fraud, and requires that the circumstances constituting fraud shall be stated with particularity." *NCC Sunday Inserts, Inc. v. World Color Press, Inc.*, 692 F. Supp. 327, 329 (S.D.N.Y. 1988) (ellipsis and quotation marks omitted). While the scienter element of fraud "may be averred generally, this leeway is not a license to base claims of fraud on speculation and conclusory allegations." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (citations omitted).

Even read liberally, Kaiser's fraud allegations are conclusory and pleaded without particularity. The Complaint's fraud count solely alleges that StubHub, Inc. "knowingly falsely and fraudulently advertised ticket sales to plaintiffs and the public it had no authority to sell nor serve as third party broker and thereby converted funds by means of the fraud." Compl. ¶ 44.

Plaintiff not only fails to allege a misrepresentation, but also fails to allege specific intent to defraud or any knowledge of the falsity of any statement. At best, Plaintiff alleges in conclusory fashion that StubHub, Inc. "knew that it had no authority to sell and/or serve as third party broker for the sale of tickets to a variety of events, including Tottenham Hotspurs Stadium tickets," and that "[StubHub, Inc.] was repeatedly notified by Tottenham Stadium and other entertainment and sports venues that it was not authorized to sell tickets to their events." *Id.* ¶¶ 19-20.[8]

Plaintiff does not explain the basis for his fraud allegations "or any other particular facts associated with the fraud[.]" *Martin*, 2023 WL 2024672, at *7. As a result, Plaintiff has also failed to plead fraud with the specificity required under Rule 9(b). *See Eternity Glob.*, 375 F.3d at 187 ("Fraud [claims] . . . requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." (Internal citations omitted)). Specifically, Plaintiff does not allege: (1) as of when or how StubHub, Inc. knew it had no authority; (2) when or how Tottenham Stadium and other entertainment and sports venues notified StubHub, Inc. that it "had no authority to sell and/or serve as third party broker"; (3) who "other entertainment and sports venues" even are; and (4) what other events StubHub, Inc. "had no authority to sell and/or serve as third party broker" for. As explained above, the User Agreement explicitly puts both buyers and sellers on notice of the risks associated with buying and selling tickets directly to other registered users. User Agreement §§ 1, 3.1., 3.2., 20.1. Kaiser was aware, or should have been aware, that not only was StubHub, Inc. not the seller of the tickets he purchased, but that StubHub, Inc. also did not and could not guarantee the validity of a

---

[8] As previously explained and detailed in the User Agreement, StubHub, Inc. does not sell tickets, but rather, serves as a marketplace which allows registered users to buy and sell tickets to one another. User Agreement §§ 3.1., 3.2.

seller's ticket. Furthermore, the Complaint also fails to even plead in conclusory fashion that Kaiser reasonably relied upon some representation made by StubHub, Inc. Regardless, there in fact could be no reasonable reliance because of the express language of the User Agreement.

In sum, the Complaint does not allege the necessary "legs" of a fraud claim, let alone alleging them as "strong legs" so as to withstand the heightened pleading requirements under Rule 9(b). Kaiser's fraud claim must be dismissed.

### E.    The Civil RICO Claim Should Be Dismissed as Impermissibly Extraterritorial.

As a threshold matter, the Court should dismiss Plaintiff's RICO claim as it is impermissibly extraterritorial because Kaiser purchased tickets to a soccer match through a **UK entity's** (StubHub (UK) Limited) website, which is serviced by a **Spain entity** (Ticketbis S.L.). Gonzales Decl. ¶¶ 13-16, 18; Thompson Decl. ¶ 5. The *only* domestic connection alleged is that plaintiff resides in Brooklyn where he used his computer to purchase the tickets at issue. Compl. ¶ 7.

There is a longstanding presumption that Congress does not intend for federal laws to have extraterritorial application absent "clearly expressed congressional intent to the contrary." *Yegiazaryan v. Smagin*, 599 U.S. 533, 541 (2023) (citations omitted). In the context of RICO claims, the "substantive provisions" of RICO apply extraterritorially only "to the same extent that RICO's predicate[] [acts] do." *Id.* at 542. Here, the Complaint appears to suggest that the predicate acts are the "illegal acts of fraud and conversion." But, the Complaint does not specify which predicate acts Kaiser is in fact alleging. Assuming arguendo that he is proceeding under a fraud-based predicate act, such predicate act "does not apply extraterritorially." *Fire & Police Pension Ass'n of Colorado v. Bank of Montreal*, 368 F. Supp. 3d 681, 709 (S.D.N.Y. 2019) (finding that a RICO claim based on the predicate act of wire fraud does not apply extraterritorially). As noted above, Kaiser's only domestic connection is that he purchased tickets from his home in Brooklyn.

14

That is not enough to satisfy a RICO claim. *See id.* ("[A]lleging that some domestic conduct occurred cannot support a claim of domestic application because the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case." (Emphasis in original) (citation omitted) (quoting *Norex Petroleum Ltd. v. Access Indus., Inc.*, 631 F.3d 29, 33 (2d Cir. 2010) and *Morrison v. Nat'l Austrl. Bank Ltd.*, 561 U.S. 247, 266 (2010))).

Separately, RICO's private right of action requires a plaintiff plead and prove "a *domestic* injury." *Yegiazaryan*, 599 U.S. at 542 (emphasis in original). "[D]etermining whether a plaintiff has alleged a domestic injury for purposes of RICO is a context-specific inquiry that turns largely on the particular facts alleged in a complaint." *Id.* at 543 (brackets omitted). The "focus is on the injury, not in isolation, but as the product of racketeering activity." *Id.* at 545. "[I]n the context of RICO, the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise." *Id.* at 544 (quotation marks and citation omitted). The residence of the plaintiff is not determinative of this analysis. *Id.* Likewise, the situs where a plaintiff "felt his economic injury" is not determinative of whether the injury is domestic or foreign. *Id.* at 545.

Notwithstanding that Kaiser does not plead any cognizable predicate act under 18 U.S.C. § 1961(1) for a civil RICO claim, (since conversion and common law fraud are not recognized predicate acts, *see infra* **Point I** (F)(ii)), all the conduct complained of by Kaiser occurred abroad. Here, unlike *Yegiazaryan*, where "[m]uch of the alleged racketeering activity that caused the injury occurred in the United States," *id.* at 546, the only domestic connection pleaded in the Complaint is Kaiser's purchase of the tickets while using his computer in his Brooklyn home. Compl. ¶ 7. Therefore, the only domestic connection is where Kaiser "felt his economic injury" which does

15

not fulfill the requirement for a domestic connection for his civil RICO claim. *Yegiazaryan*, 599 U.S. at 545.

**F.    The Civil RICO Claim Fails to State a Claim.**

"To establish a civil RICO claim, a plaintiff must allege (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, as well as injury to business or property as a result of the RICO violation." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013). Plaintiff must allege predicate acts involving fraud with particularity under Rule 9(b). *Id.* To do so, a plaintiff must "adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Id.* (Citation and quotation marks omitted). "The various RICO predicate acts . . . all require specific intent." *Ritchie v. Taylor*, 701 F. App'x 45, 47 (2d Cir. 2017).

**i.    <u>Kaiser Does Not Adequately Allege a "Pattern of Racketeering" Because He Alleges a Single Transaction.</u>**

"The pattern of racketeering activity must consist of two or more predicate acts of racketeering." *Lundy*, 711 F.3d at 119. Kaiser has alleged only a single transaction in the Complaint, and this is simply not sufficient to establish a pattern of racketeering. *See Eternity Glob.*, 375 F.3d at 187 (holding fraud claims cannot be based "on speculation and conclusory allegations"). Nonetheless, because no predicate act is adequately alleged (nor could it be), there can obviously be no pattern of predicate acts cognizable for a civil RICO claim, even if more than one transaction was alleged.

**ii.    <u>Kaiser Does Not Adequately Allege Any Cognizable Predicate Acts Under 18 U.S.C. § 1961(1).</u>**

Kaiser alleges that the sale of soccer match tickets were fraudulent and conversionary and that similar sales are the predicate acts under 18 U.S.C. § 1961(1) implicated here. Compl. ¶ 47.

But neither common law fraud nor conversion are RICO predicate acts under § 1961(1). *Vargas v. Choice Health Leasing*, No. 09 CIV. 8264 DLC, 2010 WL 3398482, at *6 (S.D.N.Y. Aug. 26, 2010) ("It is well-settled that the list of predicate acts in § 1961(1) is an exclusive set. (Citing *Spool*, 520 F.3d at 183)); *Jordan v. Pierre*, No. 18-CV-8528 (JGK), 2021 WL 2581444, at *3 (S.D.N.Y. June 22, 2021) (dismissing RICO claims based on state law violations because, among other reasons, such laws are not listed in § 1961 as cognizable predicate acts), *aff'd sub nom. Jordan v. Tilzer*, No. 21-1938, 2022 WL 16544335 (2d Cir. Oct. 31, 2022). Because Kaiser cannot, and has not, adequately alleged fraud or conversion, these allegations cannot serve as viable predicate acts here. Additionally, Kaiser cannot, and has not, established reasonable reliance on his fraud claim in light of the express terms of the User Agreement. Reasonable reliance is required for a RICO predicate act premised on a cognizable fraud under § 1961(1). *See City of New York v. Cyco.Net, Inc.*, 383 F. Supp. 2d 526, 559 (S.D.N.Y. 2005) ("the Second Circuit has adopted a 'reliance' component that plaintiffs seeking to recover under civil RICO where the predicate acts are mail or wire fraud, must prove").

### iii.    Kaiser Cannot Adequately Allege the Requisite Scienter for Any Purported Predicate Acts.

Allegations of RICO predicate acts "require specific intent." *Ritchie*, 701 F. App'x at 47 (mail and wire fraud require specific intent). Kaiser has not pled that StubHub, Inc. had knowledge of its alleged wrongdoing or a specific intent to defraud anybody. At best, Kaiser alleges in conclusory fashion that StubHub, Inc. "knew that it had no authority to sell and/or serve as third party broker for the sale of tickets to a variety of events, including Tottenham Hotspurs Stadium tickets," and that "StubHub was repeatedly notified by Tottenham Stadium and other entertainment and sports venues that it was not authorized to sell tickets to their events." Compl. ¶¶ 19-20. But fatally, plaintiff does not explain such allegations, let alone with the specificity required under

Rule 9(b). Specifically, plaintiff does not allege: (1) as of when or how StubHub, Inc. knew it had no authority; (2) when or how Tottenham Stadium and other entertainment and sports venues notified StubHub, Inc.; (3) who "other entertainment and sports venues" even are; and (4) what other events StubHub, Inc. is prohibited from facilitating the sales of tickets for. Therefore, the Complaint fails to adequately allege "specific intent" to commit any alleged predicate act and therefore should be dismissed. *Ritchie*, 701 F. App'x at 47; *Eternity Glob.*, 375 F.3d at 187 (holding fraud claims cannot be based "on speculation and conclusory allegations").

### iv.    Kaiser Cannot Adequately Allege Proximate Causation Because StubHub, Inc. Did Not Own the Ticket at Issue Here and StubHub, Inc. Expressly Disclaims Any Responsibility for the Validity of Tickets Sold Through StubHub, Inc.'s Website.

A civil RICO claim further requires a plaintiff to plead proximate causation, which requires "some direct relation between the injury asserted and the injurious conduct alleged." *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010). "The concepts of direct relationship and foreseeability are of course two of the many shapes proximate cause took at common law, . . . the focus is on the directness of the relationship between the conduct and the harm." *Id.* at 12. "In the context of predicate acts grounded in fraud, the proximate cause requirement means that the plaintiff must prove both transaction and loss causation." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994). This means that "in addition to showing that but for the defendant's misrepresentations the transaction would not have come about, the defendant must also show that the misstatements were the reason the transaction turned out to be a losing one." *Id.* So, "when factors other than the defendant's fraud are an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions." *Id.*

Here, Plaintiff complains of a ticket he purchased *from a seller* through SH Int'l. Allegedly, the seller's tickets were not working when Plaintiff brought them to the soccer stadium on match

day. The risk of a seller's tickets not proving to be valid is a risk whether Plaintiff bought the ticket through SH Int'l or another online marketplace, or even in-person from the seller themselves. In short, the User Agreement makes clear through its express provisions and representations that StubHub, Inc. did not promise Kaiser (and in fact expressly disclaims) the validity of a ticket, and that there is a risk a seller does not meet its obligations. Therefore, Kaiser cannot adequately allege it was StubHub, Inc.'s conduct that prevented Kaiser from having a valid ticket.

> ### v.    Kaiser Fails to Adequately Plead a RICO "Enterprise" Because StubHub, Inc. by Itself Cannot Constitute an "Enterprise".

A "basic principle" for RICO liability is that "one must allege and prove the existence of two distinct entities." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). Plaintiff does not allege who comprises the alleged "enterprise" through which racketeering activity occurred. There are only two references to an "enterprise," (Compl. ¶¶ 24, 47), and they pertain only to StubHub, Inc.; there is no reference, let alone explanation, of any other entity or its role in some supposed racketeering enterprise. For this reason alone, the Court can (and should) dismiss the RICO claim.

For the foregoing reasons, the Court should dismiss the RICO claim.

## POINT II    Alternatively, the Court Should Compel the Parties to Arbitrate this Case, and Stay the Current Action Pending the Completion of Arbitral Proceedings

### A.    The FAA Requires Enforcement of the Agreement to Arbitrate.

The United States Supreme Court has held that "Section 2 of the Federal Arbitration Act ("FAA") makes agreements to arbitrate valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011). Furthermore, "courts must rigorously enforce arbitration agreements according to their terms." *American Exp. Co. v. Italian Colors Restaurant*, 570 U.S.

228, 233 (2013). There is a policy favoring arbitration and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Under the FAA, courts "construe arbitration clauses as broadly as possible," and will compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 250 (2d Cir. 1991) (quotation marks and citations omitted).

The FAA governs the Arbitration Agreement. The FAA applies to any arbitration agreement that is "written" and in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. Both criteria are met here: (i) the Arbitration Agreement is in writing and (ii) transactions conducted through StubHub, Inc.'s online global marketplace plainly involve interstate commerce. *See*, *e.g.*, *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) ("We have interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'–words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power."). The User Agreement expressly provides that "[t]he Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate." User Agreement § 22.1. Here, Kaiser accepted the StubHub, Inc. User Agreement and its Agreement to Arbitrate when he registered for a StubHub, Inc. account. Gonzales Decl. ¶¶ 11, 24-27.

Under the FAA, arbitration agreements, like the one Kaiser agreed to here, are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the Supreme Court has explained, "[t]he overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so

as to facilitate streamlined proceedings." *Concepcion*, 563 U.S. at 344. To that end, Section 2 of the FAA embodies a "liberal federal policy favoring arbitration agreements." *Id.* at 346. Once a court determines that the parties to a litigation agreed to arbitrate, the FAA gives the court no discretion; rather, it must compel the parties to arbitrate. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Here, no grounds "exist at law or in equity for the revocation of," 9 U.S.C. § 2, Plaintiff's Arbitration Agreement, which is similar to the one that the Supreme Court considered and upheld in *Concepcion*. *Compare* Gonzales Decl. ¶ 12, *with Concepcion*, 563 U.S. at 344. Kaiser has a single conclusory allegation that "[b]ecause the agreement between defendant and plaintiff was bargained for fraudulently by defendant, the venue provisions pertaining to the ticket purchase agreement, including any and all provisions to arbitrate disputes, are void and unenforceable." Compl. ¶ 6. But fatally, Kaiser ignores a long-standing principle in arbitration law that "an arbitration provision is severable from the remainder of the contract" and an attack to the contract as a whole is not an attack to the arbitration provision. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). But even worse, Kaiser does not explain in further allegations his purported suggestion of fraudulent inducement, nor can he because he agreed to the User Agreement over a year before he purchased the ticket at issue here and thus could not have possibly been fraudulently induced into signing the User Agreement, let alone the Agreement to Arbitrate. *See* Decl. ¶ 11; Compl. ¶ 6.

### B.    *Kaiser Unequivocally Agreed to Resolve Disputes with StubHub, Inc. via Mandatory Arbitration.*

An individual creating an account with StubHub, Inc. must agree to the StubHub, Inc. User Agreement and its attendant policies, which are all incorporated by referenced or expressly referenced therein. Gonzales Decl. ¶¶ 6, 9. The individual is notified of the User Agreement during

the process of creating an account by a prominently placed message located directly below the "Create account" button. *Id*. ¶ 6. StubHub, Inc.'s business records reflect that Kaiser registered a user account with on February 6, 2022, and agreed to StubHub, Inc.'s User Agreement. *Id*. ¶ 11.

StubHub, Inc.'s User Agreement effective June 2022 was in effect when Kaiser purchased the soccer match ticket he complains of here. *Id*. ¶ 12; Compl. ¶ 11. Notably, the User Agreement accepted by Kaiser (and all StubHub, Inc. users), includes an agreement to arbitrate, specifically advising StubHub, Inc. users that any and all disputes or claims arising between the user and StubHub, Inc. shall be resolved exclusively through arbitration on an individual basis, rather than in court, except that the user may assert claims in small claims court, if the user's claims qualify and remain in that court. *Id*. ¶ 25. The StubHub, Inc. User Agreement highlights the arbitration provision in its Introduction section in bold and provides the following under its Legal Disputes Section:

> If you reside in the United States or Canada, You and us each agree, except where prohibited by law, that any and all disputes or claims that have arisen or may arise between you and us relating in any way to or arising out of this or previous versions of the User Agreement (including this Agreement to Arbitrate, as the term is defined below) or the breach or validity thereof, your use of or access to the Site or Services, or any tickets or related passes sold or purchased through the Site or Services shall be resolved exclusively through final and binding arbitration administered by the American Arbitration Association ("AAA") in accordance with its Consumer Arbitration Rules ("Rules"), rather than in court, except that you may assert claims in small claims court, if your claims qualify and so long as the matter remains in such court and advances only on an individual (non-class, non-representative) basis (together with subsections 22(A)-(F), the "Agreement to Arbitrate"). This Agreement to Arbitrate is intended to be broadly interpreted. The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate.
>
> A. Prohibition of Class and Representative Actions and Non-Individualized Relief
> **1. Prohibition of Class and Representative Actions**
> EXCEPT WHERE PROHIBITED BY LAW, YOU AND US AGREE THAT EACH OF US MAY BRING CLAIMS PURSUANT TO THIS AGREEMENT TO ARBITRATE AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED

CLASS, OR REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION OR PROCEEDING. UNLESS BOTH YOU AND US AGREE OTHERWISE, THE ARBITRATOR SHALL NOT CONSOLIDATE OR JOIN MORE THAN ONE PERSON'S OR PARTY'S CLAIMS AND SHALL NOT OTHERWISE PRESIDE OVER ANY FORM OF A CONSOLIDATED, REPRESENTATIVE, CLASS, OR PRIVATE ATTORNEY GENERAL ACTION OR PROCEEDING.

User Agreement §§ 22.1., 22.1.(A)(1) (emphasis in original).

These terms were made available to Kaiser for review prior to his agreement to them and Kaiser had the option to opt out of the agreement to arbitrate:

**You can choose to reject this Agreement to Arbitrate ('opt out') by mailing us a written opt-out notice ('Opt-Out Notice'). The Opt-Out Notice must be postmarked no later than 30 days after the date you accept the User Agreement for the first time. You may also opt out no later than 30 days upon receipt of notice that the arbitration provision is being updated or changed. You must mail the Opt-Out Notice to StubHub, Inc., Attn: Litigation Department, Re: Opt-Out Notice, 1209 Orange Street, Corporation Trust Center, Wilmington, DE 19801.**
For your convenience, we are providing an Opt-Out Notice form you must complete and mail to opt out of the Agreement to Arbitrate. You must complete the Opt-Out Notice form by providing the information called for in the form, including your name, address (including street number and address, city, state, and zip code), phone number and the email address(es) used to log in to the account(s) to which the opt-out applies. You must sign the Opt-Out Notice for it to be effective. This procedure is the only way you can opt out of the Agreement to Arbitrate. If you opt out of the Agreement to Arbitrate, all other parts of the User Agreement will continue to apply. Opting out of this Agreement to Arbitrate has no effect on any previous, other, or future arbitration agreements that you may have with us.

User Agreement § 22.1.(E) (emphasis in original).

Kaiser did not opt out of the Arbitration Agreement. *Id*. ¶¶ 26-27. Therefore, assuming arguendo that he in fact purchased the tickets at issue through StubHub, Inc.'s website, his access to and use of StubHub, Inc.'s website, (User Agreement § 1), and any claim arising therefrom, (User Agreement § 22.1.), is plainly governed by the User Agreement and its legal disputes and arbitration provisions.

### C.   *Kaiser's Claims Fall Within the Scope of the Arbitration Agreement*

The claims asserted against StubHub, Inc. in this action squarely fall within the types of claims covered in the Arbitration Agreement.  The User Agreement § 22.1. explicitly requires that Kaiser arbitrate:

> any and all disputes or claims that have arisen or may arise between you and us relating in any way to or arising out of this or previous versions of the User Agreement (including this Agreement to Arbitrate, as the term is defined below) or the breach or validity thereof, your use of or access to the Site or Services, or any tickets or related passes sold or purchased through the Site or Services.

Where the arbitration clause is broad, as is the case here, the Supreme Court has said that there is a heightened presumption of arbitrability such that "in the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (brackets omitted). This Circuit has also recognized that the broad language used in the User Agreement at issue represents "a quintessential broad arbitration clause." *See Wendt v. BondFactor Co. LLC*, No. 16-CV-7751 (DLC), 2017 WL 3309733, at *6 (S.D.N.Y. Aug. 2, 2017) (*citing Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998)).

As detailed above, the Agreement to Arbitrate requires Kaiser to arbitrate "any and all disputes or claims" arising out of his "use of or access to the Site or Services." User Agreement § 22.1. Kaiser's claims are solely based on allegations concerning StubHub, Inc.'s marketing practices in brokering tickets and the purchase by Kaiser of a ticket through StubHub, Inc. (even though he in fact did not buy through StubHub, Inc.'s site). *See* Compl. ¶¶ 7, 17-19. Even if there were doubt as to whether the arbitration provision covers Kaiser's claims, any doubt must be resolved in favor of arbitration. The Supreme Court has confirmed that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"

when "the problem at hand is the construction of the contract language itself." *Moses H. Cone*, 460 U.S. at 24-25. Accordingly, Kaiser's claims are fully arbitrable and the Court should compel the parties to arbitrate the claims here.

### D.    *The FAA Requires a Stay of this Action Pending Arbitration*

When, as here, the FAA governs an arbitration provision that covers a plaintiff's claims, Section 3 of the FAA specifies that the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. In other words, Section 3 of the FAA "provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991); *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 746 (2023) ("Section 3 of the [FAA] provides for a stay of court proceedings pending arbitration [.]"). StubHub, Inc. therefore respectfully requests that if this Court does not dismiss the action, that it enter an order staying litigation of the claims against StubHub, Inc. pending the outcome of any arbitration that Plaintiff may pursue.

### CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice. If the Court is not so inclined to do so, it should alternatively compel arbitration of this dispute and stay this litigation pending the conclusion of arbitral proceedings.

Dated: February 2, 2024

**HOLLAND & KNIGHT LLP**

*/s/ Duvol M. Thompson*
Duvol M. Thompson
Amir Alimehri
31 W 52nd Street, 12th Floor
New York, NY 10019
Duvol.Thompson@hklaw.com
Amir.Alimehri@hklaw.com
(212) 513-3200
***Attorneys for Defendant StubHub, Inc.***