UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DANIEL J. KAISER, on behalf of himself and all others similarly situated,

         Plaintiff,

-against-

STUBHUB, INC.,

         Defendant.

Case No. 1:24-cv-00044 (JLR)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

  Daniel J. Kaiser ("Plaintiff") brings this putative class action against Defendant StubHub, Inc. ("StubHub") based on alleged sales of "invalid and/or bogus tickets sold on the StubHub web site for which StubHub served as seller and/or third-party broker." Dkt. 18 (the "Amended Complaint" or "Am. Compl.") ¶ 27. For the following reasons, StubHub's motion to compel arbitration and stay this case pending the conclusion of proceedings before the arbitrator is GRANTED. The pending motions are otherwise denied.

## BACKGROUND

### I. Facts

#### A. Plaintiff Creates a StubHub Account[1]

  StubHub operates an online marketplace that allows registered users to offer, sell, and buy tickets to various events. Dkt. 12 ("Gonzalez Decl.") ¶ 4. To access, use, or offer to buy

---

[1] Unless otherwise noted, the facts stated in this subsection are uncontested and taken from a declaration and accompanying exhibits submitted by StubHub in connection with its motion to compel arbitration. *See* Dkt. 12. In addressing a motion to compel arbitration, the Court may consider evidence outside of the pleadings. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (in deciding motions to compel arbitration, "the court considers all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits" (brackets, ellipsis, quotation marks, and citation omitted)).

or sell a ticket on StubHub's website, the user must agree to a StubHub, Inc. user agreement. *Id.*; *see* Dkt. 12-1 (the "User Agreement"). There is no way to bypass this requirement. Gonzalez Decl. ¶ 6.

Plaintiff accepted the User Agreement and created an account with StubHub, Inc. on February 6, 2022. *Id.* ¶ 11. The User Agreement contains a notice of its "Agreement to Arbitrate," stating:

> **FOR ALL USERS RESIDING IN THE UNITED STATES, PLEASE BE ADVISED: CLAUSE 22 OF THIS AGREEMENT CONTAINS AN AGREEMENT TO ARBITRATE, WHICH WILL, WITH LIMITED EXCEPTIONS, REQUIRE YOU TO SUBMIT CLAIMS YOU HAVE AGAINST US TO BINDING AND FINAL ARBITRATION, UNLESS YOU OPT-OUT. UNLESS YOU OPT OUT: (1) YOU WILL ONLY BE PERMITTED TO PURSUE CLAIMS AGAINST US ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION OR PROCEEDING, AND (2) YOU WILL ONLY BE PERMITTED TO SEEK RELIEF (INCLUDING MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF) ON AN INDIVIDUAL BASIS.**

*Id.* ¶ 24 (quoting User Agreement § 1).

The Agreement to Arbitrate provides for arbitration over "any and all disputes or claims that have arisen or may arise between you and us relating in any way to or arising out of this or previous versions of the User Agreement (including this Agreement to Arbitrate . . . ) or the breach or validity thereof, your use of or access to the Site or Services, or any tickets or related passes sold or purchased through the Site or Services." User Agreement § 22.1. The provision further states that "[t]his Agreement to Arbitrate is intended to be broadly interpreted" and that the Federal Arbitration Act (the "FAA") "governs the interpretation and enforcement of this Agreement to Arbitrate." *Id.*

The User Agreement allows users to opt out of the Agreement to Arbitrate by mailing a written opt-out notice to an address in Delaware. *Id.* § 22.1(E). StubHub asserts, and Plaintiff does not dispute, that Plaintiff did not opt out of the Agreement to Arbitrate in the User Agreement. Gonzalez Decl. ¶ 27.

### B. Plaintiff Allegedly Purchases Tickets Through StubHub's Website[2]

Plaintiff visited StubHub, Inc.'s website and purchased two tickets for a soccer game on September 30, 2023, in Tottenham, England. Am. Compl. ¶ 7. Prior to traveling to England for the game, Plaintiff received an email dated September 15, 2023, which stated:

> Hello User,
>
> **We're just as excited as you for Tottenham Hotspur vs Liverpool FC!**
>
> We just wanted to remind you that **Tottenham Hotspur will release the tickets a few days before the event**. We'll send you an email when yours are ready
>
> **Remember, our 100% Guarantee ensures you'll have your tickets in hand in time for the event.**
>
> Thank you for your patience and trust. See you at Tottenham Hotspur Stadium!

Dkt. 13-2 at 3; *see* Am. Compl. ¶ 8. The email was sent from "order-update@orders.stubhubinternational.com" and had a "StubHub" logo in the top left corner of the body of the email. Dkt. 13-2 at 2-3. On September 27, 2023, Plaintiff received another email from the same address, stating:

---

[2] Unless otherwise noted, the facts stated in this subsection are taken primarily from the Amended Complaint and accepted as true. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010). The Court also considers documents, such as the emails cited by Plaintiff, that are attached to, or incorporated by reference into, the Amended Complaint. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam) ("When ruling on a motion to dismiss, documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." (quotation marks and citation omitted)).

> Hello User,
>
> **Tottenham Hotspur vs Liverpool FC Tickets is around the corner!**
>
> We know you're on your toes waiting for your tickets to arrive, so don't worry. We'll send you an email when yours are available.
>
> **Get ready!**
>
> 1. **Stay tuned**
> Download our app to track everything directly from the palm of your hand.
>
> 2. **Keep an eye on your inbox**
> Don't forget to add us to your safe sender list and check your spam or junk folder.
>
> 3. **Learn more**
> You can visit our Help Center for more information.
>
> **Remember, your order is 100% Guaranteed**

Dkt. 13-3 at 2-3; *see* Am. Compl. ¶ 9. This email also had the "StubHub" logo in the top left corner of the body of the email. Dkt. 13-3 at 3. After Plaintiff flew to London on September 28, 2023, he received yet another email from the same address, stating:

> Hello Daniel,
>
> The seller sent you your tickets! Check your email kaiser@ksmlaw.com for a transfer offer and follow the instructions carefully to get your tickets.
>
> You might already have the email. If not, it'll be in your inbox soon.

Dkt. 13-4 at 2-3; *see* Am. Compl. ¶¶ 10-11. Just as with the prior emails, this email had the "StubHub" logo in the top left corner of the body of the email. Dkt. 13-4 at 3.

Plaintiff "downloaded" the two tickets and went with a guest to the stadium for the game. Am. Compl. ¶¶ 12-13. When Plaintiff and his guest arrived, a Tottenham Ticket Office employee told Plaintiff "that the tickets were fraudulent/invalid and that StubHub was

4

not authorized to sell and/or serve as a third party broker for tickets at Tottenham Hotspur[] Stadium." *Id.* ¶ 15. The employee told Plaintiff that other "StubHub customers" previously had the same experience and were turned away on game day. *Id.* The employee handed Plaintiff "a preprinted flyer explaining the problem of fraudulent ticket sales and that no tickets sold by anyone other than the Stadium are valid." *Id.* ¶ 16.

Plaintiff alleges that "StubHub has sold hundreds of invalid, unauthorized Tottenham Hotspur[] Stadium tickets and, indeed, thousands of tickets to a variety of events that it never had authorization to sell nor to serve as a third[-party] broker." *Id.* ¶ 17. Plaintiff also alleges that "StubHub knew that it had no authority to sell and/or serve as third party broker for the sale of tickets to a variety of events, including Tottenham Hotspur[] Stadium tickets to plaintiff Kaiser and all those similarly situated." *Id.* ¶ 19. Plaintiff further claims that Tottenham Hotspur Stadium and other venues have repeatedly told StubHub that it was not authorized to sell tickets to their events but StubHub has ignored these communications. *Id.* ¶ 20.

## II.  Procedural History

On November 22, 2023, Plaintiff sued StubHub in New York state court for: (1) breach of contract; (2) conversion; (3) fraud; and (4) a civil claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Dkt. 1-1 ¶¶ 37-48; *see also* Am. Compl. ¶¶ 37-48 (same). StubHub removed the case to federal court on January 3, 2024, Dkt. 1, and moved, on February 2, 2024, to dismiss the complaint or, in the alternative, compel arbitration, Dkt. 14 ("Br."). Plaintiff amended his complaint on February 15, 2024, to add a jury demand. Am. Compl. at 1. Rather than refile, StubHub elected to stand on its original motion. Dkt. 19. On March 8, 2024, Plaintiff filed his opposition to StubHub's motion to dismiss or to compel arbitration and cross-moved to file a

second amended complaint.  Dkt. 22 ("Opp."); *see* Dkt. 21-2 (the "Second Amended Complaint" or "Second Am. Compl.").  StubHub filed its reply in support of its motion to dismiss or compel arbitration and in opposition to Plaintiff's motion to amend on March 22, 2024.  Dkt. 26.

## LEGAL STANDARD

When both a motion to dismiss and a motion to compel arbitration are before the Court, the Court "should generally rule on a motion to compel arbitration before proceeding to a merits-based motion to dismiss."  *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 181 (S.D.N.Y. 2018), *aff'd*, 837 F. App'x 841 (2d Cir. 2021) (summary order); *see Bimota SPA v. Rousseau*, 628 F. Supp. 2d 500, 502 (S.D.N.Y. 2009) (considering and granting defendants' motion to compel arbitration on all of plaintiff's claims, thus obviating need to consider partial motion to dismiss); *Rosehoff Ltd. v. Cataclean Ams. LLC*, No. 12-cv-01143, 2013 WL 2389725, at *10 (W.D.N.Y. May 30, 2013) (assessing the parties' merits arguments, including "the sufficiency of the claims in the complaint," would be "unnecessary and contrary to judicial economy" if case must be stayed or dismissed in favor of arbitration).  Therefore, the Court will first address StubHub's motion to compel arbitration.

When considering a motion to compel arbitration under the FAA, 9 U.S.C. § 1 *et seq.*, courts "apply a 'standard similar to that applicable for a motion for summary judgment,'" *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)).  Under this standard, "the Court must grant a motion to compel arbitration if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law."  *Ryan v. JPMorgan Chase & Co.*, 924 F. Supp. 2d 559, 561-62 (S.D.N.Y. 2013).  If the facts in the record are undisputed

and "require the matter of arbitrability to be decided against one side or the other as a matter of law," the Court "may rule on the basis of that legal issue and avoid the need for further court proceedings." *Zachman*, 49 F.4th at 101 (quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017)).

Under Section 2 of the FAA, arbitration agreement[s] are generally "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has emphasized that the FAA "establishes 'a liberal federal policy favoring arbitration agreements.'" *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "[B]y its terms, the FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (further brackets omitted) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). Still, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [the party] has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citation omitted).

**DISCUSSION**

I. **Motion to Compel Arbitration**

In deciding whether claims are subject to arbitration, a court must first determine whether the parties agreed to arbitrate. *Zachman*, 49 F.4th at 101. If an agreement to arbitrate exists, the court must determine, as relevant here, the scope of that agreement and "whether Congress intended any federal statutory claims asserted to be non-arbitrable." *Id.*

StubHub argues that Plaintiff's claims are subject to arbitration under the arbitration clause in its User Agreement, which Plaintiff accepted when he became a registered user of StubHub. *See* Br. at 19-25. Plaintiff does not dispute that he entered into the User Agreement with StubHub or that the User Agreement contains an agreement to arbitrate. He also does not dispute that he did not opt out of the User Agreement's arbitration agreement. Instead, Plaintiff argues that the Agreement to Arbitrate is unenforceable.

Plaintiff alleges, somewhat unclearly, that "[b]ecause the agreement between defendant and plaintiff[] was bargained for fraudulently by defendant, the venue provisions pertaining to the ticket purchase agreement, including any and all provisions to arbitrate disputes, are void and unenforceable." Am. Compl. ¶ 6. Plaintiff further explains in his brief that StubHub was not authorized to broker the ticket sale for the Tottenham game and therefore engaged in fraudulent conduct by creating a false impression that it was so authorized. *See* Opp. at 2-3. Given StubHub's lack of authority and fraudulent conduct, Plaintiff argues, the User Agreement – including its arbitration language – is unenforceable. *See id.* The Court does not agree. Plaintiff's claim that StubHub engaged in fraud during the Tottenham ticket transaction is itself subject to the arbitration clause in the User Agreement. *See, e.g.*, *Meadows Indem. Co. v. Baccala & Shoop Ins. Servs., Inc.*, 760 F. Supp. 1036, 1043 n.5 (E.D.N.Y. 1991) ("[F]raud claims are arbitrable under federal arbitration law unless the arbitration clause itself was allegedly fraudulently induced.").

The User Agreement contains a relatively broad arbitration clause that covers "any and all disputes or claims that have arisen or may arise between [Plaintiff] and [StubHub] relating in any way to or arising out of this or previous versions of the User Agreement (including this Agreement to Arbitrate . . . ) or the breach or validity thereof, [Plaintiff's] use of or access to the Site or Services, or any tickets or related passes sold or purchased through the Site or

8

Services." User Agreement § 22.1. A clause that refers to claims "arising out of or relating to" an agreement is "the paradigm of a broad clause." *New London Assocs., LLC v. Kinetic Soc. LLC*, 384 F. Supp. 3d 392, 406 (S.D.N.Y. 2019) (quoting *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995)). "When 'arising out of,' 'relating to,' or similar words appear in a forum selection clause, such language is regularly construed to encompass . . . tort claims associated with the underlying contract." *Credit Suisse Sec. (USA) LLC v. Hilliard*, 469 F. Supp. 2d 103, 107 (S.D.N.Y. 2007); *see Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022) ("[A]n arbitration agreement is a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." (quotation marks and citation omitted)).

All of Plaintiff's claims "aris[e] out of" or "relat[e] in any way" to Plaintiff's "use of or access to the Site." User Agreement § 22.1. Plaintiff grounds his claims on the allegations that he visited StubHub's website, through which StubHub sold (or served as a third-party broker of the sale of) the "invalid and/or bogus" Tottenham tickets. Am. Compl. ¶¶ 7, 19, 27. Plaintiff contends that StubHub falsely and fraudulently advertised tickets on its website that it had no authority to sell or broker. *Id.* ¶¶ 41, 44, 47. All four of Plaintiff's claims, which are based on StubHub's conduct and marketing practices on its website, therefore arise out of or relate "in any way" to the use or access of StubHub's website. User Agreement § 22.1; *cf. Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 854 (2d Cir. 1987) (fraud claims fall within the scope of arbitration clause covering "all claims and disputes of whatever nature arising under this contract"), *abrogated on other grounds as recognized by Rodriguez-Depena v. Parts Auth., Inc.*, 877 F.3d 122, 124 n.1 (2d Cir. 2017).[3]

---

[3] The Court is not persuaded by the case law cited in Plaintiff's brief on this point. *See* Opp. at 12. The only binding precedent cited, *Opals on Ice Lingerie v. Bodylines, Inc.*, 320 F.3d

Even if Paragraph 6 of the Amended Complaint were construed as arguing that StubHub fraudulently induced Plaintiff to enter the User Agreement, over a year before he purchased the Tottenham tickets, "a party's challenge to . . . the contract as a whole[] does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010); *see ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 29 (2d Cir. 2002) ("It is well settled that a claim or defense of fraudulent inducement, when it challenges generally the enforceability of a contract containing an arbitration clause rather than specifically the arbitration clause itself, may be subject to arbitration."). The arbitration provision is "severable from the remainder of the contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). Therefore, Plaintiff cannot avoid the arbitration clause by claiming that he was fraudulently induced to enter the User Agreement.

Plaintiff further tries to avoid the arbitration clause by noting that StubHub itself denies that it was authorized to sell the Tottenham tickets. *See* Opp. at 12. Therefore, Plaintiff argues, he did not consent to arbitration with StubHub because "there is no applicable user agreement between [Plaintiff] and StubHub as to the unauthorized Tottenham ticket transaction." *Id.*

Plaintiff is correct to note that StubHub asserts that its website does not permit the sale of soccer tickets for matches in the United Kingdom and that anyone seeking to purchase such tickets on its website is redirected by a message on its website to StubHub International ("SHI"), a separate company to which StubHub has licensed the "StubHub" trademark. *See*

---

362 (2d Cir. 2003), is inapposite because unlike here, where Plaintiff undisputedly entered into the User Agreement with StubHub, the agreement with the arbitration clause in *Opals* contained forged signatures and there was no otherwise valid agreement between the parties, *see id.* at 370-71.

Gonzales Decl. ¶¶ 14-15, 17, 21. But Plaintiff misconstrues the scope of the arbitration clause in the User Agreement and its impact on the parties' dispute. The obligation to arbitrate is based on the User Agreement, not the alleged transaction for the Tottenham tickets. Regardless of whether StubHub actually sold the Tottenham tickets to Plaintiff, Plaintiff does not dispute that he entered into the User Agreement when he became a registered user of StubHub's website. The arbitration clause within this User Agreement provides for arbitration of "any and all disputes or claims . . . relating in any way to or arising out of . . . [Plaintiff's] use of or access to the Site or Services, or any tickets or related passes sold or purchased through the Site or Services." User Agreement § 22.1. Even if StubHub did not sell the tickets on its website, such that this dispute does not arise out of tickets sold or purchased through the Site, the former portion of the arbitration clause still provides for the arbitration of claims relating to the "use of or access to the Site." *Id.* The claims here all relate to Plaintiff's use of or access to the StubHub website, even if, as StubHub asserts, the website directed him to SHI through which he ultimately purchased the tickets.[4]

Finally, StubHub requests that the action be stayed during the pendency of the arbitration. Br. at 25. "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *see* 9 U.S.C. § 3 (providing that the court "shall on application of one of the parties stay the trial of the action

---

[4] As to the question of whether Congress intended the federal claim to be non-arbitrable, Plaintiff does not argue that Plaintiff's RICO claim is nonarbitrable and the Court concludes that it is arbitrable. *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 242 (1987) (finding "no basis for concluding that Congress intended to prevent enforcement of agreements to arbitrate RICO claims"); *accord Kowalewski v. Samandarov*, 590 F. Supp. 2d 477, 491 (S.D.N.Y. 2008) ("Arbitration agreements relating to RICO claims are indisputably enforceable.").

11

until such arbitration has been had in accordance with the terms of the agreement"). Therefore, the Court grants StubHub's request to stay this case pending the arbitration.

## II. Motion to Dismiss

StubHub moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff did not purchase the tickets at issue through StubHub, Inc. but instead through SHI. *See* Br. at 8-9. StubHub further argues that: (1) Plaintiff's conversion claim is duplicative of his breach-of-contract claim; (2) Plaintiff's fraud claim is duplicative of his breach-of-contract claim and fails to plead fraud with particularity; and (3) Plaintiff's civil RICO claim is impermissibly extraterritorial and fails to allege a pattern of racketeering, cognizable predicate acts, the requisite scienter, proximate causation, or a RICO enterprise. *See id.* at 9-19. Whether Plaintiff's claims are viable is currently for the arbitrator, not the Court, to decide. Because Plaintiff is required to arbitrate his claims against StubHub, the motion to dismiss Plaintiff's claims is denied as moot. *See, e.g.*, *Glover v. Bob's Discount Furniture, LLC*, 621 F. Supp. 3d 442, 451 (S.D.N.Y. 2022) (denying motion to dismiss as moot after granted motion to compel arbitration).

## III. Motion for Leave to Amend

Finally, the Court turns to Plaintiff's request for leave to file the Second Amended Complaint. *See* Opp. at 15. Federal Rule of Civil Procedure 15(a)(1) allows a party to amend its complaint once as a matter of course within 21 days after serving the complaint or within 21 days after a responsive pleading has been served. Fed. R. Civ. P. 15(a)(1). Where, as here, the time for amendment as a matter of course has passed, a party may amend its pleading only with the opposing party's written consent or with leave of court. Fed. R. Civ. P. 15(a)(2). A "court should freely give leave [to amend] when justice so requires." *Id.* Nevertheless, "it is within the sound discretion of the district court to grant or

deny leave to amend." *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009) (citation omitted). Certain factors "such as undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party[,] . . . [and] futility of amendment" may justify a district court's decision to deny leave to amend. *Williams v. Citigroup Inc.*, 659 F.3d 208, 213-14 (2d Cir. 2011) (per curiam) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Proposed amendments are futile when they "would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) (citation omitted).

The Court denies Plaintiff's motion to amend the complaint due to the futility of his proposed amendments. The additional claims set forth in the Second Amended Complaint still arise out of or relate to StubHub's website. Plaintiff continues to allege that he visited StubHub's website and purchased two tickets to the Tottenham soccer game. Second Am. Compl. ¶ 7. Plaintiff seeks to add allegations supporting two new claims that StubHub, in connection with its third-party brokering services, (1) failed to monitor the use of its brand name by SHI to sell tickets, and (2) engaged in deceptive business and advertising practices. *Id.* ¶¶ 27, 35, 60, 63. Those claims therefore still arise out of or relate to Plaintiff's use of or access to StubHub's website. Therefore, amending the complaint to add these allegations would not cure any deficiency with respect to whether this dispute may proceed in this Court. *See Catz v. Precision Glob. Consulting*, No. 19-cv-07499 (ER), 2021 WL 1600097, at *14 (S.D.N.Y. Apr. 23, 2021) (granting defendant's motion to compel arbitration and thus denying motion to amend the complaint that would not change this result); *Kutluca v. PQ N.Y. Inc.*, 266 F. Supp. 3d 692, 704-05 (S.D.N.Y. 2017) (same); *Oguejiofo v. Open Text Corp.*, No. 09-cv-01278 (RWS), 2010 WL 1904022, at *3 (S.D.N.Y. May 10, 2010) ("Since the

13

arbitration clause applies to this dispute, . . . any amendment by [the plaintiff] would be futile."). Thus, the motion to amend is denied.

## CONCLUSION

For the foregoing reasons, StubHub's motion to compel arbitration is GRANTED, and the Court hereby STAYS the case pending completion of arbitration proceedings. StubHub's motion to dismiss is DENIED without prejudice as moot. Plaintiff's cross-motion to amend the complaint is DENIED. The Clerk of Court is respectfully directed to terminate the motions at Dkts. 11 and 20.

Dated: July 17, 2024
       New York, New York

                                      SO ORDERED.

                                      JENNIFER L. ROCHON
                                      United States District Judge